# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1659 | **DATE** | 6/22/2001 |
| **CASE TITLE** | Marc Livingston vs. Associates Finance Inc | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Report and Recommendation recommending that plaintiff's Discovery Motion be granted in part, and that Plaintiffs be allowed limited discovery to pursue the possibility of prohibitive costs associated with arbitrating their claims. The Court further recommends that Plaintiff's Motion for Extension of Time be granted, so that Plaintiffs may undertake discovery and have an opportunity to present any significant findings in a new response to Defendants' Motion to Compel Arbitration. The Court, while outwardly rejecting three of plaintiffs' four arguments for not compelling arbitration, recommends that the District Court wait to decide Defendants' motion to Compel Arbitration until plaintiffs have had an opportunity to pursue limited discovery regarding prohibitive costs. AK

(11) X [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 2 number of notices | Document Number |
| | No notices required. | | |
| X | Notices mailed by judge's staff. | JUN 25 2001 date docketed | 52 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| X | Copy to judge/magistrate judge. | 6/22/01 date mailed notice | |
| AC6 courtroom deputy's initials | | FILED FOR DOCKETING 01 JUN 22 PM 3:03 Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARC LIVINGSTON and<br>MICHELLE LIVINGSTON,<br><br>Plaintiffs,<br><br>v.<br><br>ASSOCIATES FINANCE, INC.,<br>CITIGROUP, INC.,<br>CITIFINANCIAL CREDIT COMPANY,<br>ASSOCIATES FIRST CAPITAL<br>CORPORATION, and ASSOCIATES<br>CORPORATION OF NORTH AMERICA<br><br>Defendants. | No. 01 C 1659<br><br>Judge David H. Coar<br><br>Magistrate Judge<br>Arlander Keys<br><br>DOCKETED<br>JUN 2 5 2001 |

TO: THE HONORABLE DAVID H. COAR
UNITED STATES DISTRICT COURT JUDGE

### REPORT AND RECOMMENDATION

Before the Court are Defendants' Motion to Compel Arbitration and Stay Proceedings, and, In Addition, To Dismiss Class Claims[1] ("Defendants' Motion to Compel Arbitration"); Plaintiffs' Motion for Leave to Pursue Discovery In Response to Defendants' Motion to Compel Arbitration ("Plaintiffs' Discovery Motion"); and Plaintiffs' Motion for Extension of Time to Respond to Defendants' Motion to Compel Arbitration ("Plaintiffs' Motion for Extension of Time"). Because this Court recommends that Plaintiffs be allowed

---

[1] The Court will not address the class claims in this Report and Recommendation ("R & R"). That issue is before the District Court.

limited discovery with respect to the likely fees and costs that they will be expected to incur pursuant to the arbitration agreement, and for the reasons set forth below, this Court recommends that Plaintiffs' Discovery Motion be granted in part, that Plaintiffs' Motion for Extension of Time be granted, and that Defendants' Motion to Compel Arbitration be stayed until after Plaintiffs have had an opportunity (after limited discovery) to respond to Defendants' Motion to Compel Arbitration.[2]

---

[2] By recommending that Plaintiffs be allowed limited discovery into the area of costs and fees associated with arbitrating their claims, the Court must necessarily recommend that they be allowed to file a new Response (they have only filed a Preliminary Response) to Defendants' Motion to Compel Arbitration, if their discovery bears any fruit. As discussed *infra*, the Court has serious doubts that limited discovery into costs will result in Plaintiffs being able to effectively challenge arbitration on the grounds of "prohibitive costs". Nonetheless, by allowing discovery, Plaintiffs necessarily need an avenue to present any significant findings. Therefore, at this juncture, this Court cannot recommend a definitive ruling on Defendants' Motion to Compel Arbitration, as discovery has not yet been completed. However, this R & R does, indeed, discuss all of the substantive issues raised by Defendants in their Motion to Compel Arbitration, and recommends that, except for the issue of prohibitive costs (which cannot be addressed until after discovery), Plaintiffs be forced to arbitrate their claims. In other words, as discussed in detail *infra*, this Court finds that the issues of recission of the underlying contract and fraud in the inducement can be properly addressed by the arbitrator. This Court also finds that there does not need to be any discovery with respect to the potential bias of the arbitrators. Therefore, this R & R contemplates only one potential avenue of challenging the arbitration agreement - prohibitive cost - and

(continued...)

## BACKGROUND

From May 1995 to August 1999, Plaintiffs, Marc and Michelle Livingston, entered into nine loan agreements with Defendant Associates Finance, Inc. ("Associates"). The loan agreements contained an arbitration agreement, in which Plaintiffs and Associates agreed to submit to arbitration "all claims and disputes arising out of, in connection with, or relating to" the mortgage or any other loan from Associates. At some point during the last loan transaction (in August 1999), Plaintiffs became dissatisfied with their relationship with Associates, and purported to rescind the loan agreement under the federal Truth In Lending Act, ("TILA"), 15 U.S.C. § 1601, et. seq. (West 2001), and the federal regulations associated with TILA, 12 C.F.R. § 226 (West 2001). Plaintiffs do not want to arbitrate their claims, and the Motions before the Court all center around whether Plaintiffs should be compelled, pursuant to the arbitration agreement, to arbitrate their claims against Associates.[3]

---

[2](...continued)
recommends that the District Court decide that issue after Plaintiffs have had an opportunity to pursue limited discovery in that area.

[3] The relevant procedural history of this case is as follows: On March 8, 2001, Plaintiffs filed their Complaint, which raised
(continued...)

## DISCUSSION

In the case at bar, Plaintiffs advocate four reasons why they should not be forced to arbitrate their claims: (1) they rescinded the loan agreement that provides for arbitration (and, therefore, there is no enforceable contract between the parties); (2) the cost of arbitrating is prohibitively high; (3) the American Arbitration

---

[3](...continued)
both individual and putative class claims pertaining to the August 1999 Loan under TILA, TILA's implementing regulations, and state law, including the Illinois Consumer Fraud Act, 815 ILCA 505/2 (West 2001). (The class claims are not before this Court.) On April 18, 2001, Defendants filed their Motion to Compel Arbitration, requesting, inter alia, that the Court compel arbitration of Plaintiffs' individual claims and stay further court proceedings pending completion of arbitration. On April 26, 2001, the District Court entered an Order staying all discovery. On April 27, 2001, Plaintiffs filed their Discovery Motion, seeking leave to take discovery pertaining to arbitration costs and bias of the arbitrators. Defendants filed their opposition to Plaintiffs' Discovery Motion on May 2, 2001. The next day – on May 3rd – Plaintiffs filed their Motion for Extension of Time to respond to Defendants' Motion to Compel Arbitration. (This Motion for Extension of Time was predicated on Plaintiffs' request for discovery set forth in their Discovery Motion.) On May 7, 2001, Plaintiffs filed their Preliminary Response to Defendants' Motion to Compel Arbitration ("Preliminary Response"). On May 16 (or 18), 2001, the District Court referred all discovery disputes to this Court, including Plaintiffs' Discovery Motion, and Plaintiffs' Motion for Extension of Time. (This Court assumes (as do the parties) that it is also advising the District Court on Defendants' Motion to Compel Arbitration, which is intertwined with Plaintiffs' Discovery Motion and Motion for Extension of Time.) On May 16th, Defendants filed their Reply to their Motion to Compel Arbitration.

Association ("AAA") - the contractually-designated arbitrators - are biased in favor of Defendants; and (4) Defendants fraudulently induced them to enter into the arbitration agreement. Each of these arguments will be addressed in turn.

I. **There Is An Enforceable Contract Between the Parties; This Court Recommends That The Question of Recission Should Be Decided By the Arbitrator.**

In their Preliminary Response, Plaintiffs argue that the arbitration agreement is unenforceable because they rescinded the August 1999 Loan pursuant to Section 1635 of TILA and its implementing regulations, specifically Regulation Z. According to Plaintiffs, the recission took place by operation of law, and any basis for compelling arbitration no longer exists. While this may be true, it is clear that, in the Seventh Circuit, whether an arbitration agreement has, in fact, been rescinded is an issue for the arbitrator, assuming that the scope of the arbitration agreement includes all claims "related to" that agreement, which in this case, it undisputedly does.[4]  *See, e.g., Sweet Dreams*

---

[4] The arbitration agreement, under the section "Disputes Covered", states, in pertinent part: "This agreement applies to all claims and disputes between you and us. This includes, without limitation, all claims and disputes arising out of, in connection with, or relating to: your loan from us today; any previous loan from us and any previous retail installment sales contract or loan assigned to us; . . . whether the claim or
(continued...)

*Unlimited, Inc. v. Dial-A-Mattress Intern., Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993)(finding that recission claim "arose out of" the underlying contract, and, therefore, was a question for arbitrator and not for court); *Dorsey v. H.C.P. Sales, Inc.*, 46 F. Supp. 2d 804, 806 (N.D. Ill. 1999)(rejecting the plaintiff's claim that the arbitration clause was unenforceable because the plaintiff exercised right of recission for TILA violations, and referring recission claim to arbitrator)(citation omitted).[5] Therefore, the

---

[4](...continued)
dispute must be arbitrated; the validity of this arbitration agreement; . . . any claim or dispute based on an allegation of fraud or misrepresentation, including fraud in the inducement of this or any other agreement . . . any claim or dispute based on a federal or state statute . . .". Here, Plaintiffs argue that recission occurred by operation of the relevant statute (TILA). But, as explained *infra*, that question is for the arbitrator to decide.

[5] Indeed, in *Dorsey*, the plaintiff argued that her agreement to arbitrate all claims arising out of a loan contract was unenforceable because she had purportedly rescinded the contract under Section 1635 of TILA and Regulation Z - the same argument advanced by Plaintiffs in the case *sub judice*. The court found this argument "unavailing", however, and recognized that the asserted recission claim arose out of the contract itself, and, therefore, required arbitration. 46 F. Supp. 2d at 806. In Plaintiffs' Preliminary Response, they do not even address the import of *Dorsey*, but instead rely on case law outside of this jurisdiction. In *Wilson v. Par Builders II, Inc.*, 879 F. Supp. 1187, 1190 (M.D. Fla. 1995), the court decided that it (and not the arbitrator) had to decide the effect, if any, of the plaintiffs' notice of recission under TILA. However, even if this Court were to find *Wilson* persuasive, it cannot go against
(continued...)

Court recommends that the District Court reject Plaintiffs' argument concerning recission of the loan agreement as a basis for not compelling arbitration.

II  Based on the Supreme Court's Recent Opinion in *Green Tree, Infra*, This Court Recommends that Plaintiffs Be Allowed Limited Discovery Regarding the Costs of Arbitration.

As one of their reasons for urging the Court to reject Defendants' Motion to Compel Arbitration, Plaintiffs argue that the costs of arbitration are prohibitively expensive, and seek discovery to prove such an assertion. Defendants counter that the arbitration agreement, as well as the Commercial Rules of the AAA, clearly establish that the costs will not be prohibitive, as they are to be allocated by the arbitrator at the conclusion of arbitration.[6]

---

[5](...continued)
the clear precedent established in this Circuit. The Seventh Circuit case, *Sweet Dreams*, *supra*, clearly rejected Plaintiffs' argument that recission may occur by operation of the pertinent statute and, therefore, preclude arbitration. Rather, the Seventh Circuit held that the recission claim "arose out of" the underlying contract and was, therefore, a question for arbitration. 1 F.3d at 642. The fact that *Sweet Dreams* concerned the Illinois Franchise Act (and not TILA) is insignificant, as its holding was not limited to any one statute. Furthermore, the Seventh Circuit recently reaffirmed its holding in *Sweet Dreams* in *Harter v. Iowa Grain Co.*, 220 F.3d 544, 550-51 (7th Cir. 2000).

[6] The arbitration agreement, in a section called "Costs of Arbitration", states, in pertinent part: "If you start arbitration, you agree to pay the initial filing fee and required
(continued...)

Defendants' point is well-taken, as there are cases within this jurisdiction that have stated just that. *See, e.g., Brown v. Surety Fin. Serv., Inc.*, No. 99 C 2405, 2000 WL 528631, at * 3 (N.D. Ill. March 24, 2000)(finding that the AAA Commercial Rules "contain safeguards protecting plaintiffs from inordinate arbitration costs."); *Thompson v. Illinois Title Loans, Inc.*, No. 99 C 3952, 2000 WL 45493, at *5 (N.D. Ill. Jan. 11, 2000)(rejecting plaintiff's contention that arbitration costs, under the AAA, for TILA claims

---

[6](...continued)
deposit required by the American Arbitration Association . . . If you believe you are financially unable to pay such fees, you may ask the American Arbitration Association to defer or reduce such fees, pursuant to the Commercial Arbitration Rules. If the American Arbitration Association does not defer or reduce such fees so that you are able to afford them, we will, upon your written request, pay the fees, subject to later allocation of the fees and expenses between you and us by the arbitrator. There may be other costs during the arbitration, such as attorney's fees, expenses of travel to the arbitration, and the costs of the arbitration hearings. The Commercial Arbitration Rules determine who will pay the fees." The Commercial Arbitration Rules confirm that the "fees" only cover AAA administrative services and do not cover arbitrator compensation or expenses, reporting services, or any post-award charges incurred by the parties in enforcing the award. (*See* Exhibit F of Plaintiffs' Preliminary Response at 4.) The Commercial Arbitration Rules also state that, while administrative fees may be deferred or reduced, they will not be waived. (*Id.* at 18.) Finally, the rules permit the arbitrator to allocate or assess all arbitration expenses against any specified party. (*Id.*) Therefore, it cannot be said with confidence that Plaintiffs will not be saddled with prohibitive costs.

were prohibitive, and compelling arbitration). However, both of these cases were decided prior to the Supreme Court's recent pronouncement in *Green Tree Financial Corp. - Alabama v. Randolph*, 121 S. Ct. 513 (2000).

In *Green Tree*, the Supreme Court acknowledged that a legitimate reason to deny arbitration is if a party might "be saddled with prohibitive [arbitration] costs". 121 S. Ct. at 522. Because the arbitration agreement at issue in *Green Tree* was silent with respect to who paid the relevant arbitration costs, and because there was limited evidence before the Court that the costs were, indeed, prohibitively expensive, the Court compelled arbitration, finding the plaintiff's "unfounded assumptions" regarding costs to be "speculative". *Id.* Significantly, the Supreme Court stated that it is the burden of the party resisting arbitration to establish excessive costs: where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* The Supreme Court, however, did not discuss how the party resisting arbitration would establish that the costs were prohibitively excessive: "How detailed the showing of prohibitive expense must be before the party seeking arbitration

must come forward with contrary evidence is a matter we need not discuss; for in this case *neither during discovery* nor when the case was presented on the merits was there any timely showing at all." *Id.* at 522-23 (emphasis added). Therefore, it appears that the Supreme Court implicitly indicated that discovery would be the appropriate vehicle to make particularized findings regarding excessive costs.

Furthermore, it seems axiomatic that, if the Supreme Court places a burden of proof on a party, then that party must be given an opportunity to pursue discovery related to the issue that it has the burden to prove. While Defendants argue that Plaintiffs have all the information related to costs that they need (i.e. the arbitration agreement itself and the AAA Commercial Rules), the Supreme Court noted in *Green Tree* that such generic information is not enough to satisfy the party's burden of proof to prove excessive costs.[7] While this Court is extremely doubtful that Plaintiffs, in the case *sub judice*, will ultimately be able to prove the likelihood

---

[7] This limited evidence that the Supreme Court rejected as too speculative to prove excessive costs was informational material from the AAA and an article in the Daily Labor Report. *Green Tree*, 121 S. Ct. at 522, fn. 6. Therefore, it appears that more specific information is needed, and the only way that Plaintiffs would be able to reasonably undercover such specifics is through limited discovery.

that they will be saddled with prohibitive costs, the Court recommends that they at least be allowed limited discovery into this arena, or the Supreme Court's burden of proof enunciated in *Green Tree* becomes a nullity.[8] The Court recommends, however, that such discovery be strictly limited to the likely costs that Plaintiffs will incur in this particular case if Plaintiffs are compelled to arbitrate, as well as procedures regarding the waiving of fees and costs.[9] Discovery requests shall not include requests for general

---

[8] While there are no published cases after *Green Tree* that explicitly discuss whether a party resisting arbitration should be allowed limited discovery into the question of prohibitive costs, this Court notes that Judge Guzman, in a minute order dated May 25, 2001, — citing *Green Tree* - allowed limited discovery into the likely costs that the plaintiff would incur if compelled to arbitrate. Significantly, Judge Guzman noted that *Green Tree* did not hold that, if the arbitration agreement provides for arbitration fee allocations (as does the case *sub judice*), there is no need for discovery as to the likelihood of amassing prohibitive costs in arbitration. Rather, Judge Guzman recognized that, without discovery, the plaintiff would be foreclosed from trying to establish excessive costs, when the Supreme Court placed that burden squarely on the plaintiff. *Arellano v. Household Finance Corp.*, No. 01 C 2433. While Judge Guzman's order is not published, and, therefore, holds no precedential value, this Court notes that its reasoning is persuasive and seems to be entirely consistent with the Supreme Court's approach in *Green Tree*.

[9] In *Bradford v. Rockwell Semiconductor Systems, Inc.*, 238 F.3d 549, 557 (4th Cir. 2001), the court noted that *Green Tree* suggested a showing of individualized prohibitive expense to invalidate an arbitration agreement. *Bradford* stated that an individual who claims to be financially burdened by the fee-
(continued...)

statistical information, because such information is irrelevant as to Plaintiffs' costs in this specific case. In sum, while cognizant that Plaintiffs should not be allowed to embark on a fishing expedition, this Court believes they should at least be given a fighting chance to prove prohibitive costs with respect to the specific statutory right at issue. The total costs, of course, are not just the administrative fee, but include all fees associated with arbitration, including (but not limited to) the arbitrator's fees and expenses.[10]

---

[9](...continued)
splitting provision in an arbitration agreement should raise objections to the fee-splitting arrangement by including a specific forecast of his expected costs and his expected financial burden *prior* to the beginning of arbitration. *Id.* at 559, fn. 7. Here, Plaintiffs are, essentially, requesting discovery so that they can try to make the requisite showing prior to arbitration.

[10] As an alternative, the District Court could follow the approach in *Giordano v. Pep Boys - Manny, Moe, & Jack, Inc.*, No. CIV. A. 99-1281, 2001 WL 484360, at *5-6 (E.D. Pa. March 29, 2001), where the court, noting *Green Tree*, compelled arbitration, but found the cost-sharing provision in the arbitration agreement (which required both parties to equally share the expenses, and the initiating party to pay the filing fees) unenforceable. The court, then, merely struck the cost-sharing provision of the arbitration agreement - resulting in the defendant employer paying all the costs - but still compelled arbitration. Therefore, to the extent that Plaintiffs prove the costs are prohibitive with respect to the specific statutory right at issue, the District Court could compel arbitration, and then order Associates to pay the costs associated with arbitration.

### III. This Court Does Not Recommend That Plaintiffs Be Allowed Discovery With Respect To Potential Bias On The Part Of The Arbitrators.

Plaintiffs argue that the AAA is biased in favor of corporate defendants (such as Associates), and that, therefore, they should be allowed discovery to prove this bias. However, the cases Plaintiffs cite to support this proposition are not on point, as they concern different arbitral forums than the AAA. Indeed, in *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 309-10 (6th Cir. 2000), *cert. denied*, 121 S. Ct. 763 (2001), *Penn v. Ryan's Family Steak Houses, Inc.*, 95 F. Supp.2d 940, 946 (N.D. Ind. 2000), and *Geiger v. Ryan's Family Steak Houses, Inc.*, 134 F. Supp.2d 985, 994 (S.D. Ind. 2001), the arbitrator was Employment Dispute Services, Inc. ("ESDI") and not the AAA. This fact is significant because, in the aforementioned cases, the court found that the employer paid ESDI to provide an employment resolution forum,[11] and that ESDI had an incentive to please the employer – a valued repeat customer. In other words, these cases noted that, with ESDI, there was a high probability of selecting biased arbitrators. Significantly, the court in *Floss* specifically contrasted ESDI,

---

[11] Ironically, the fact that the AAA does not automatically charge the corporate client the administrative fees helps shield against bias, but then arguably supports Plaintiffs' claim about prohibitive costs.

-13-

which had a potential for bias, with the AAA, which implicitly the court felt did not. See *Floss*, 211 F.3d at 314.

Furthermore, in *Toppings v. Meritech Mortg. Services, Inc.*, No. Civ. A. 2:00-1055, 2001 WL 408990 (S.D. W. Va. Apr. 23, 2001) – another case relied on by Plaintiffs – the arbitral forum was the National Arbitration Forum ("NAF") and not the AAA. The *Toppings* court noted the plaintiffs' assertions that the NAF was "a creditor-friendly arbitrator organization" whose directors "are former employees of lending institutions and members of the defense bar that have specialized in representing lenders in litigation against consumers." 2001 WL 408990. The *Toppings* court also noted the plaintiffs' assertion regarding the way NAF marketed its services. *Id.* Therefore, the *Toppings* court allowed discovery into possible bias of the NAF forum. Here, however, the AAA has taken precautions against such bias, such as publishing *The Code of Ethics for Arbitrators in Commercial Disputes* (attached to Defendants' Reply as Exhibit A), and by expressly prohibiting the parties from making compensation arrangements directly with the arbitrator and, instead, mandating that they be paid through the AAA itself. (Commercial Rule R-53(d), attached as Exhibit F to Plaintiffs' Preliminary

Response.)[12]

The only case cited by Plaintiffs in which a court allowed discovery regarding potential bias of the AAA forum was in *Phillips v. Associates Home Equity Services, Inc.*, No. 01 C 1944, in which Judge Kennelly, in an oral ruling on June 6, 2001, did not preclude it. In that case – while expressing his doubts that the plaintiffs would be able to show that the AAA is biased in favor of lenders in cases such as this – Judge Kennelly, nevertheless, granted expedited discovery on that issue. Because the ruling was made from the bench, with little argument, the rationale for that ruling is not known. This Court notes, however, that, in his May 25, 2001 Order in *Arellano*, *supra*, contrary to the court in *Toppings*, Judge Guzman specifically denied a plaintiff's motion to pursue discovery with regard to the potential bias of the NAF. In his ruling, Judge Guzman rejected the plaintiff's argument regarding a "strong potential for bias" on the part of the NAF,[13] and agreed that the

---

[12] Plaintiffs also argue that the AAA has filed *amicus curiae* briefs in support of corporations – instead of individuals – and that such support illustrates potential bias. However, the AAA merely supported the non-substantive result in favor of the extra-judicial arbitral forum in such cases, and did not advocate for or against the corporation in the underlying claim. Therefore, Plaintiffs' argument in this regard is unavailing.

[13] In not allowing discovery into the potential bias of the
(continued...)

plaintiff was merely seeking to embark on a fishing expedition on that issue.

## IV. The Court Recommends That The Fraud In The Inducement Claim Be Decided By An Arbitrator.

The Plaintiffs' final argument is that they should not be compelled to arbitrate their claims, as Defendants fraudulently induced them to agree to arbitrate. However, fatal to this argument is that Plaintiffs' fraud claim is based on alleged fraud in the entire loan agreement – and not just the arbitration agreement. In their Preliminary Response, Plaintiffs explain that, by August 1999, when Plaintiffs entered their last loan transaction with Associates, Associates already knew that it was under investigation by the Federal Trade Commission, and failed to disclose this material fact, in violation of the Illinois Consumer Fraud Act. However, assuming this allegation is true, the fraudulent scheme alleged implicates the entire loan agreement and is not particularized to the arbitration agreement. While Plaintiffs cite *Prima Paint Corp. v. Flood & Conklin Mfg., Co.*, 388 U.S. 395 (1967) to support their

---

[13](...continued)
NAF, Judge Guzman noted that the NAF rules provide for the exercise of one peremptory strike of a proposed arbitrator. Here, with the AAA, this Court notes that both parties are involved in selecting the arbitrator, and any arbitrator may be subject to disqualification for bias. (Commercial Rule E-5.)

fraud in the inducement argument, they misread the import of this influential case. The Supreme Court in *Prima Paint* stated that, while courts may decide issues of fraud pertaining to an arbitration agreement itself, issues of fraud pertaining to the contract must be arbitrated. *Id.* at 403-04. *See also Sweet Dreams, supra*, 1 F.3d at 642, fn. 4 ("[A] court may consider a claim that a contracting party was fraudulently induced to include an arbitration provision in the agreement but not claims that the entire contract was the product of fraud."); *Harter v. Iowa Grain Co.*, 220 F.3d 544, 550 (7th Cir. 2000)("The party must show that the arbitration clause *itself* . . . is vitiated by fraud [in order to unravel a contractual arbitration clause].")(emphasis in original)(citation and internal quotations omitted). Here, because there are no particular allegations of fraud with respect to the specific arbitration agreement itself, this Court recommends that Plaintiffs' fraudulent inducement claim be submitted to arbitration.[14]

---

[14] Plaintiffs' reliance on *Moseley v. Electronic & Missile Facilities, Inc.*, 374 U.S. 167, 171 (1963), *Hullum v. Sherbondy*, 931 F.2d 60 (9th Cir. 1991)(Table) and *Toppings, supra*, to argue that the court should decide the fraud in the inducement claim is entirely unpersuasive. *Mosley* was decided before *Prima Paint*, and, therefore, is not good law. *See, e.g., Arnold v. Arnold Corp.-Printed Communications for Business*, 920 F.2d 1269, 1280-81 (6th Cir. 1990)(finding that "[a]lthough in *Mosley*, it was
(continued...)

## CONCLUSION

The Court recommends that Plaintiffs' Discovery Motion be granted in part, and that Plaintiffs be allowed limited discovery to pursue the possibility of prohibitive costs associated with arbitrating their claims. Discovery, however, should be prescribed to only allow Plaintiffs the ability to uncover information about the specific costs they are likely to entail, and not general statistical information. Accordingly, the Court further recommends that Plaintiffs' Motion for Extension of Time be granted, so that Plaintiffs may undertake discovery, and have an opportunity to present any significant findings in a new Response to Defendants' Motion to Compel Arbitration. Finally, the Court, while outwardly rejecting three of Plaintiffs' four arguments for not compelling arbitration, recommends that the District Court wait to decide Defendants' Motion to Compel Arbitration until Plaintiffs have had an opportunity to pursue limited discovery regarding prohibitive

---

[14](...continued)
sufficient for the plaintiff to plead that the arbitration clause was part of a broader fraudulent scheme, under *Prima Paint*, such an allegation, without more, is no longer sufficient to overcome the strong federal policy in favor of arbitration."). *Hullum* is an unpublished case in the Ninth Circuit and holds no precedential value. Finally, *Toppings* does not involve allegations of a scheme to defraud, and, in any event, holds no precedential value in this Circuit.

costs.

DATED: June 22, 2001    RESPECTFULLY SUBMITTED:

*[signature]*

ARLANDER KEYS
United States Magistrate Judge

Counsel have ten days from the date of service to file objections to this Report and Recommendation with the Honorable David H. Coar. *See* FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. *Egert v. Connecticut Gen. Life Ins. Co.*, 900 F.2d 1032, 1039 (7th Cir. 1990).